## BOSTON INS. CO. v. HUDSON.

(Circuit Court of Appeals, Ninth Circuit. April 5, 1926.)

No. 4710.

**1. Insurance ⊚⇒282(1)—Stipulation invalidating fire policy if insured's interest is other than unconditional and sole ownership, or subject is building on ground not owned by insured in fee simple, is valid, and breach thereof is complete defense to action on policy.**

Stipulation in fire policy that it shall be void if insured's interest be other than unconditional and sole ownership or subject of insurance be a building on ground not owned by insured in fee simple is valid, and breach thereof is complete defense to action on policy.

**2. Insurance ⊚⇒378(1)—That insurer or its agent had notice, before a loss, of breach of sole ownership and fee title conditions, does not avail insured, waive breach, or work estoppel.**

That insurer or its agent had notice, before a loss, of breach of condition of unconditional and sole ownership or fee title to ground on which insured building is located, does not avail insured, waive breach, or work estoppel.

11 F.(2d)—61

**3. Insurance ⊚⇒376(2)—Where fire policy, whose conditions could be waived by insurer's representative only by written indorsement, and which was void if subject was building on ground not owned by insured in fee, was issued in name of individual on house possessed by corporation under contract to purchase, no recovery could be had thereon, though insurer's agent knew true state of title before loss.**

Where fire policy on dwelling house in possession of corporation under contract to purchase was issued in name of individual, without indorsement as to true state of title, and provided that it should be void if subject of insurance was building on ground not owned by insured in fee simple, and that no representative of insurer had power to waive any provision except by written indorsement, no recovery could be had thereon, though insurer's agent had knowledge of true state of title before loss.

**4. Insurance ⊚⇒645(3)—New contract to insure held not to warrant recovery for loss of building on ground not owned by insured, where it was not pleaded.**

Even if negotiations by insured, before loss, for change in or new fire policy on dwelling house on ground not owned by insured, as required by policy, constituted new contract to insure, no recovery could be had by record owner where such contract was not pleaded nor assigned to him, and insured's authority to contract for corporation having equitable interest was not shown.

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Southern District of California; Wm. P. James, Judge.

Action by Earl R. Hudson against the Boston Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed.

Gallaher, Simpson & Hays, of Fresno, Cal., and Redman & Alexander, of San Francisco, Cal., for plaintiff in error.

Irvine P. Aten, of Fresno, Cal., H. R. Crozier, of Sanger, Cal., and Frank Kauke, of Fresno, Cal., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This was an action on a California standard form fire insurance policy, containing the familiar provisions that the policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple, and that no officer, agent, or other representative of the company shall have power to waive any of the provisions or conditions of the policy,

except by writing indorsed thereon or added thereto. No testimony was offered by the defendant below, and there is no controversy over the facts. The policy was issued in the name of one Miura, the term of insurance was three years from and after January 1, 1923, and the subject of the insurance was a dwelling house, household furniture, and other property. The dwelling house and household furniture were totally destroyed by fire on September 25, 1923. The former was insured for the sum of $3,500, and the latter for $1,000. Inasmuch as the other items of property were neither damaged nor destroyed by the fire, further reference thereto is not deemed material.

At the time of the issuance of the policy, and at the time of the fire, Miura was the owner of the household furniture; but the title to the land upon which the dwelling house stood was in the name of one Hudson, the plaintiff below. Hudson had contracted to sell the land to the Rosedale Vineyard Company, a corporation of which Miura was at one time president, and the corporation was in possession under its contract of purchase. At the time of the issuance of the policy, no statement or representation in reference to the title was made by Miura, and the agent writing the policy made no inquiry concerning it. About ten days before the destruction of the property by fire, however, Miura again consulted the agent in reference to some changes in the policy or contract of insurance. He desired to reduce the amount of insurance on the dwelling from $3,500 to $3,000, the amount of insurance on the household furniture from $1,000 to $900, and to add two new items, the first being a quantity of hay to the amount of $300, and the second a tank and motor to the amount of $600. In the course of this conversation the true state of the title to the property was revealed for the first time. The agent made a notation of the proposed changes on the records of his office, and directed the First National Bank of Sanger to return the policy to him, stating that Miura wished to make some changes in the insurance. The policy was never returned, as it was in the possession of Miura at the time, although that fact was apparently unknown until some time after the fire.

While the foregoing facts appear from the testimony, they do not all appear from the pleadings, or even from the amended complaint, filed after the trial to conform to the proof. The amended complaint set forth the true state of the title to the property, and alleged that prior to the date of the destruc-tion of the building and furniture by fire the defendant and its agent knew that Miura was not the owner of the land and building; knew that he was an officer of the Rosedale Vineyard Company, the corporation purchasing the property under contract from the plaintiff; knew that the ownership and legal title to the real property and building were vested in the plaintiff, and that an equitable interest therein was vested in the Rosedale Vineyard Company, as purchaser under a contract of sale; and knew that Miura was the owner of the household furniture and personal effects.

The case was tried by the court below without a jury by written stipulation of the parties filed with the clerk. At the close of the testimony the defendant challenged its sufficiency to support a finding and judgment in favor of the plaintiff, but the challenge was denied. Findings and judgment for the plaintiff followed, and that judgment is now before us for review. The sufficiency of the testimony to support the judgment is the only question presented for our consideration.

[1] The rule is well settled that a stipulation in an insurance policy that the policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple, is valid, and that a breach of that stipulation or condition is a complete defense to an action on the policy. Imperial Fire Ins. Co. v. Coos County, 14 S. Ct. 379, 151 U. S. 452, 38 L. Ed. 231; Assurance Co. v. Building Association, 22 S. Ct. 133, 183 U. S. 308, 46 L. Ed. 213.

[2] It is equally well settled that the mere fact that the insurance company or its agent has notice of the breach before a loss will not avail the insured, or constitute a waiver of the breach, or work an estoppel. Kentucky Vermillion M. & C. Co. v. Norwich U. F. Ins. Soc., 146 F. 695, 77 C. C. A. 121; Neil Bros. Grain Co. v. Hartford Fire Ins. Co. (C. C. A.) 1 F.(2d) 904; Lumber Underwriters v. Rife, 35 S. Ct. 717, 237 U. S. 605, 59 L. Ed. 1140.

In the Norwich Insurance Case the policy provided that it should become void if the property insured remain idle for more than 30 days at any one time, unless the insured gave notice to the company and obtained permission to leave it idle for a longer period, by having the permission indorsed on the policy. The plaintiff offered to prove on the trial that the defendant had notice that the property was idle during the life of the pol-

icy, but this court held that such proof was of no avail, that a waiver could not be inferred from mere silence or inaction on the part of the insurer, and that it might wait until a claim was made under the policy and then claim a forfeiture by way of defense.

In the Neil Bros. Grain Co. Case the policy provided that it should be void if, with the knowledge of the insured, foreclosure proceedings were commenced or notice given of the sale of any property covered by the policy by virtue of any mortgage or trust deed, and it was contended that the insurance company was estopped to claim a forfeiture by reason of the commencement of foreclosure proceedings, because it had knowledge of the commencement of such proceedings, after the same were commenced and before the loss. This court ruled otherwise, however, holding that the mere fact that insurance company had notice of the foreclosure proceedings did not constitute a waiver of the breach of the condition or estop the company from interposing it as a defense.

In Rife v. Lumber Underwriters, 204 F. 32, 122 C. C. A. 346, the policy contained a warranty that "a continuous clear space of 100 feet shall at all times be maintained between the property hereby insured and any woodworking or manufacturing establishment." There was a breach of this warranty, and because thereof the trial court directed a verdict in favor of the defendant. On writ of error the Circuit Court of Appeals for the Sixth Circuit reversed the judgment, holding that evidence tending to show that the insurance company issued the policy and retained the premium with knowledge that there was a breach of the clear space warranty, and that such breach would continue during the life of the policy, was competent to raise an estoppel against the right of the insurance company to insist on a breach of the clear space provision, notwithstanding the provision of the policy that no agent or representative of the underwriters should have power to waive any provision or condition of the policy, except such as by its terms might be the subject of agreement indorsed thereon or attached thereto, and as to such provisions they could not be waived, unless in writing indorsed on or attached to the policy. But in Lumber Underwriters v. Rife, supra, the judgment of the Circuit Court of Appeals was reversed, the Supreme Court holding that a provision in a policy of insurance prescribing an express condition cannot be varied by parol evidence to the effect that the insurer knew that the condition was being violated, and had been violated

during the existence of a prior policy, of which the existing policy purported to be a renewal.

[3] From these authorities it would seem clear that the amended complaint states no cause of action against the plaintiff in error. It shows upon its face a breach of the warranty as to title, and the only claim of waiver or estoppel is the allegation that the company and its agent had notice of the true state of the title before the loss. For reasons already stated that fact was not material.

[4] But, if we look beyond the amended complaint, and consider the facts disclosed at the trial, it will not avail the defendant in error. Some ten days before the fire Miura and the agent of the company had some negotiations for a change in the policy. Whether this change was to be made by a change in the existing policy, or by a new policy, is not material. The negotiation contemplated a new and different contract to say the least. It may be claimed that these negotiations amounted to a contract to insure; but, if we concede this, no such contract was pleaded, no such contract was assigned to the defendant in error, and at that time Miura had no authority to contract in behalf of the Rosedale Vineyard Company, so far as the record discloses, because he had ceased to be either an officer or agent of that company. For these reasons, the amended complaint states no cause of action, and the findings and judgment are not supported by the testimony.

The judgment of the court below must be reversed; and it is so ordered.

GILBERT, Circuit Judge (dissenting). I am unable to agree to the proposition that Miura, at the time of his final negotiations with the general agent of the defendant, had not authority to represent the insured. It is true that he had then ceased to be the president of the Rosedale Vineyard Company, but he remained a stockholder therein, and as such he had an insurable interest. Seaman v. Enterprise Fire & Marine Ins. Co. (C. C.) 21 F. 778; Warren v. Davenport F. Ins. Co., 31 Iowa, 464, 7 Am. Rep. 160; Riggs v. Commercial Mut. Ins. Co., 25 N. E. 1058, 125 N. Y. 7, 10 L. R. A. 684, 21 Am. St. Rep. 716. He also had in his own right an insurable interest in the household furniture, which was his personal property, and, as specified in the policy, was insured in the sum of $1,000. The Rosedale Vineyard Company, of which he was president, had an insurable interest in all the remainder of the property, by virtue of its possession under a contract for the

purchase thereof. Milwaukee Mechanics' Ins. Co. v. B. S. Rhea & Son, 123 F. 9, 60 C. C. A. 103; Phenix Insurance Co. v. Kerr, 129 F. 723, 64 C. C. A. 251, 66 L. R. A. 569; Alliance Ins. Co. v. Enders (C. C. A.) 293 F. 485; Dupuy v. Delaware Ins. Co. (C. C.) 63 F. 680.

Miura also had the possession and custody of the property, and was responsible for it, and for that reason could take insurance in his own name. 26 C. J. 25; Sturm v. Atlantic Mut. Ins. Co., 63 N. Y. 77; Fire Ins. Ass'n of England v. Merchants' & Miners' Trans. Co., 7 A. 905, 66 Md. 339, 59 Am. Rep. 162. "One having the care, custody, or possession of property for another, without liability and without any pecuniary interest therein, may nevertheless obtain insurance upon such property for the benefit of the owner, and the insurance will so inure upon a subsequent adoption of an insurance, even upon the happening of a loss." 26 C. J. 26. In brief, Miura, in his dealings with the defendant's general agent, represented all interests in the insured property.

The breach of a condition that the insured owns in fee simple the ground on which the insured property stands is not always a defense to an action on the policy. The law of California, by which this contract is to be construed, is declared in McCullough v. Home Ins. Co., 102 P. 814, 155 Cal. 659, 18 Ann. Cas. 862: "The clause of the policy providing that it shall be void, if the insured's interest is other than sole and unconditional ownership, or the subject be a building on ground not owned by the insured in fee simple, is designed to remove from him the temptation to profit by the willful destruction of property not entirely owned by him. Imperial Fire Ins. Co. v. Dunham, 12 A. 668, 117 Pa. 460, 2 Am. St. Rep. 686. 'It therefore follows that the clause is in most cases held to refer to the character and quality of the title—to the actual and substantial ownership, rather than to the strictly legal title.' 2 Cooley, Ins., 1369. An equitable title in the insured is a sufficient compliance with the condition in question. A vendee in possession of property under a valid contract of purchase, which he is entitled to enforce specifically, is the holder of such equitable title. Id. 1376. And the great weight of authority supports the proposition that such vendee is the 'sole and unconditional owner,' within the meaning of the policy, even though a portion of the purchase price may yet remain unpaid."

Nor can I agree that the final negotiations between Miura and the general agent did not amount to a contract to insure. The fact that no such contract was pleaded is immaterial. The complaint is to be deemed amended to conform to the proof, in pursuance of the permission of the court given upon the decision of the case. Nor do I see how it can be said that the claim of waiver or estoppel rests upon the fact alone that the defendant and its agent had notice of the true state of the title before the loss. There was more than mere silence and inaction on the part of the defendant. There was failure to cancel the policy, there was retention of the premium, and there was a promise to reform the policy to accord with the facts.

Fantz was a general agent of the defendant, authorized "to receive proposals" for insurance, "to fix rates of premiums, to receive moneys, and to countersign, issue, and renew policies of insurance, signed by the president and countersigned by the secretary of said company." Fantz "agreed with and promised the said D. Miura that changes and indorsements would be made on said policy as so requested by him, so as to show said true condition and status of said insured property as it in fact existed." A new consideration was not necessary to support the agreement between Miura and the agent. Viele v. Germania Ins. Co., 26 Iowa, 9. In Knarston v. Manhattan Life Ins. Co., 73 P. 740, 140 Cal. 57, the court held that an oral waiver of forfeiture is not required to rest upon a new consideration, or a new agreement, or even upon such acts or conduct as would create a technical estoppel. "An insurance company may waive any condition of a policy inserted therein for its benefit." Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689.

In Manchester v. Guardian Assurance Co., 45 N. E. 381, 151 N. Y. 88, 56 Am. St. Rep. 600, it was held that, if a general agent of a fire insurance company, who has authority to indorse, consents to a change of title, and makes an oral agreement to make the required indorsement, but fails, recovery may be had upon the policy. "If, after knowledge of all the facts, the conduct of an insurance company has been such as to reasonably imply a purpose not to insist upon a forfeiture of the policy of insurance, the law, leaning against forfeitures, will apply the peculiar doctrine of waiver, invented probably to prevent them, and will hold the insurer irrevocably bound as by an election to treat the contract as if no cause of forfeiture had occurred." Washburn v. Union Central Life Ins. Co., 38 So. 1011, 143 Ala. 485.

In Neimeyer v. Claiborne, 112 S. W. 387,

87 Ark. 72, the court expressed the rule in similar words and observed that the law of waiver cannot be abolished by contract. "The insurer is precluded from asserting a forfeiture where, after acquiring knowledge of the facts constituting a breach of the condition, it has retained the unearned portion of the premium, or has failed to return or tender it back with a reasonable promptness." 26 C. J. 325; Commercial Union Assur. Co. v. Schumaker, 119 N. E. 532, 71 Ind. App. 526; Harland v. Insurance Co., 180 S. W. 998, 192 Mo. App. 198; Reimold v. Farmers' Mut. Fire Ins. Co., 127 N. W. 17, 162 Mich. 69; Ignazio v. Fire Ass'n of Philadelphia, 98 N. J. Law, 602, 121 A. 456; Terminal Ice Co. v. Security Ins. Co. (Mo. App.) 198 S. W. 1124; Commercial Life Ins. Co. v. Schroyer, 95 N. E. 1004, 176 Ind. 654, Ann. Cas. 1914A, 968; Haight v. Continental Ins. Co., 92 N. Y. 51; Staats v. Pioneer Ins. Ass'n, 104 P. 185, 55 Wash. 51; N. J. Rubber Co. v. Com. Union Assur. Co., 46 A. 777, 64 N. J. Law, 580.

Said Mr. Justice Bean in Schmurr v. State Insurance Co., 46 P. 363, 365, 30 Or. 29, 36, "The company itself, after being advised of the breach, retained the premium, and took no steps whatever toward the cancellation of the policy, and therefore waived the forfeiture." In New York Life Ins. Co. v. Dumler (C. C. A.) 282 F. 969, the court said: "When the company was notified of the apparent invalidity of the policy, it had the right to avail itself of the defense, or to waive the defect and continue the insurance. Any recognition of the policy thereafter as valid would waive the right to invalidate it. Its continued holding of the first premium was a sufficient consideration."

In Hanover Fire Ins. Co. v. Dallavo (C. C. A.) 274 F. 258, it was provided in the policy that it should be void if a building insured was on ground not owned in fee simple by the insured, or if he was not the unconditional and sole owner of the property insured. It was held that the provision was waived where the company, long prior to the loss, acquired actual knowledge that the insured property was on leased land, but retained the premiums and left the policies outstanding. In Mackintosh v. Agricultural Ins. Co., 89 P. 102, 150 Cal. 440, 448, 119 Am. St. Rep. 234, the court approved the rule expressed in 3 Cooley, Briefs on Insurance, p. 2658, that it will operate as a waiver of forfeiture if an insurance company, with knowledge of facts vitiating a policy by its acts, declarations, or dealings, "leads the insured to believe himself as protected by the policy."

Miura paid for insurance. The defendant kept the money after full notice of the error in the original policy, and promised to correct the same. Surely its conduct and promises, under the circumstances, were sufficient to assure Miura that in the meantime the property was protected against loss, and sufficient to show a waiver by the defendant of any breach in the conditions of the policy. "Forfeitures are not favored in the law, and * * * courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture." Hartford Life Ins. Co. v. Unsell, 12 S. Ct. 671, 674, 144 U. S. 439, 449 (36 L. Ed. 496).

In the majority opinion certain decisions of this and other courts are cited to the effect that, where a policy is delivered and accepted, all parol negotiations are merged therein, and the contract cannot be modified by parol, and that mere knowledge on the part of the insurer of a breach of a condition of the policy is inadmissible to show a waiver, citing, among other cases, Assurance Co. v. Building Association, 22 S. Ct. 133, 183 U. S. 308, 46 L. Ed. 213, and Lumber Underwriters v. Rife, 35 S. Ct. 717, 237 U. S. 605, 59 L. Ed. 1140. I cannot see that the cases so cited are in point. It is to be admitted that waiver may not be predicated upon the insurer's mere knowledge that the insured has committed a breach of warranty. Nor is the present case one in which it is sought to vary the terms of the policy by proof of parol negotiations contemporaneous with or prior to the written contract. On the contrary, the case comes within the rule of American Fire Ins. Co. v. King Lumber Co., 39 S. Ct. 431, 250 U. S. 2, 13, 63 L. Ed. 810, where the court explained the purport of Lumber Underwriters v. Rife.

But, irrespective of the question of waiver, I submit that the negotiations between Miura and the agent constituted a valid oral contract, later to be expressed in writing. All the terms and conditions of the contract were agreed upon, and the defendant had received its premium in consideration thereof. There was nothing to indicate that the negotiations resulted only in a preliminary oral contract, to take effect in the future. In Eames v. Home Ins. Co., 94 U. S. 621, 24 L. Ed. 298, Mr. Justice Bradley said: "It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or understood, and the premium paid, if demanded.

It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used before between the parties." A case in point is Western Assurance Co. v. McAlpin, 55 N. E. 119, 23 Ind. App. 220, 77 Am. St. Rep. 423, where, after the expiration of a policy, there was an oral contract to reinsure in the name of a new owner. The agent credited the insured with payment of the premium, and promised that he would attend to the matter. It was held that the insurance contract took effect from the date of that agreement, and not from the date of the issuance of the new policy.